J-S43045-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.W., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: J.W. | : | |
| | : | |
| | : | No. 389 WDA 2017 |

Appeal from the Order February 9, 2017
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s):  CP-02-AP-0000203-2016

BEFORE: STABILE, SOLANO, and FITZGERALD[*], JJ.

MEMORANDUM BY FITZGERALD, J.:          **FILED AUGUST 30, 2017**

Appellant, Ja.W. ("Father"), appeals from the February 9, 2017 order entered in the Allegheny County Court of Common Pleas involuntarily terminating his parental rights to his son, J.W. ("Child"), born in June of 2016, pursuant to 23 Pa.C.S. § 2511(a)(2) and (b).  For the reasons that follow, we affirm.[1]

In its Pa.R.A.P. 1925(a), the trial court set forth the following facts and procedural history relevant to Father's appeal:

> [Child] entered the care of the Allegheny County Office of Children, Youth and Families (hereinafter "CYF") in June 2016, when the agency obtained an Emergency Custody Authorization ("ECA") one week after [Child's] birth. [Child] was hospitalized for 15 days after his birth because he experienced severe withdrawal symptoms due to

_____

[*] Former Justice specially assigned to the Superior Court.

[1] On the same date, the trial court also terminated the parental rights of B.A. ("Mother").  She has not appealed that decision.

[Mother's] methadone abuse during the pregnancy. Meanwhile, supervised visits were set up at the hospital for the parents to visit the newborn, but neither attended. There is some disagreement as to whether Father tried to visit [Child]. [The trial court] found him to be credible when he testified that he thought he was not allowed to visit [Child] once the ECA was issued. Still, [the trial court] also heard testimony that the parents apparently provided the hospital with incorrect contact information. [Child] was adjudicated dependent on June 28, 2016 and placed in the home of his pre-adoptive foster parents. [Child] has never spent a day in either parents['] care.

CYF created for the family a Family Service Plan ("FSP"). The FSP functions as a roadmap, complete with "goals" to aid the parents in their efforts to reunify with their child. The parents did not participate in the planning of the FSP. The goals included were the same for both parents: to continue with drug and alcohol counseling and participate in drug screenings; to visit [Child]; to attend domestic violence counseling; to contact a specified service provider to pursue stable housing; [to] sign medical releases and maintain contact with CYF; [and to] participate in a mental health evaluation. Father's compliance in this case was nonexistent for the first several months of [Child's] life. Noncompliance led the [trial court] to make an "aggravated circumstances" finding on August 22, 2016, thereby alleviating CYF from making reasonable efforts toward reunification.

Trial Ct. Op., 4/6/17, at 2-3 (record citations omitted). On September 30, 2016, the trial court held a permanency review hearing. The trial court again found that Father was noncompliant with regard to the permanency plan and determined that "no progress" had been made by Father in alleviating the circumstances that brought Child into CYF care. CYF Exhibit 1.

- 2 -

On November 9, 2016, CYF filed a petition to involuntarily terminate Father's parental rights to Child. On February 8, 2017, the trial court held a hearing and took testimony on the petition. At the time of the termination hearing, Father remained noncompliant with his FSP goals. Regarding his drug and alcohol use, Father admitted on multiple occasions to his CYF caseworker that he had used marijuana. Father also informed the caseworker that he would test positive for marijuana at a random drug screen requested on August 22, 2016. N.T., 2/8/17, at 115-16. Father failed to appear for six out of the ten drug screenings and did not appear for a drug screening until December of 2016. The only information CYF had regarding Father's compliance with this goal was Father's self-report that he was participating in methadone maintenance treatment. *Id.* at 64-65, 114, 117.

Father also demonstrated noncompliance with his FSP goals relating to domestic violence and mental health. Father's CYF caseworker testified that the agency had no information that Father had attended domestic violence counseling and was noncompliant in attending meetings with CYF to address those concerns. *Id.* at 55, 59. Father testified that he attended a once-weekly, two-hour domestic violence program, however Father was unable to verify his attendance at this program.

Regarding his mental health, Terry O'Hara, Ph.D., a licensed psychologist, testified that Father reported that he had been diagnosed with

"major mental illness, including schizophrenia and major depressive disorder." *Id.* at 145. Dr. O'Hara testified that he was limited in making an accurate diagnosis and treatment recommendation due to Father's initial failure to sign medical releases, but noted that Father did follow up with Western Psychiatric Institute and Clinic after his evaluation to address his mental health. Finally, in terms of housing, Father resides with his mother, Child's paternal grandmother. Father continues to lack independent housing and acknowledged that he cannot afford housing because he has not worked since 2010. *Id.* at 151.

On appeal, Father raises the following issues for our review and determination:

> I. Whether the trial court erred as a matter of law and/or abused its discretion in finding CYF proved by clear and convincing evidence that [F]ather, J.W.[,] has a continued incapacity that cannot be remedied?
>
> II. Whether the trial court erred in finding that terminating the parental rights of [F]ather, J.W.[,] best meets the needs and welfare of [Child]?

Father's Brief at 1.

We review an order terminating a parent's rights for an abuse of discretion or error of law. *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). We must accept the credibility determinations and factual findings of the trial court that are supported by the record. *Id.* This Court may not reverse a termination order simply because we would have reached a different result based on the same facts. *Id.*

Under section 2511 of the Adoption Act, the trial court must engage in a bifurcated process. First, the trial court must examine the parent's conduct under section 2511(a). *In re Adoption of R.J.S.*, 901 A.2d 502, 508 (Pa. Super. 2006). The burden of proof is on the petitioner to establish by clear and convincing evidence the existence of grounds for termination under section 2511(a). *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003). If the trial court finds termination is warranted under section 2511(a), it must then turn to section 2511(b), and determine if termination of the parent's rights serves the children's needs and welfare. *In re I.E.P.*, 87 A.3d 340, 344 (Pa. Super. 2014).

First, Father challenges the termination of his rights under section 2511(a)(2). Section 2511(a)(2) provides:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> \* \* \*
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

23 Pa.C.S. § 2511(a)(2). This Court has previously addressed termination under this provision, stating,

> Parental rights may be terminated under Section 2511(a)(2) if three conditions are met: (1) repeated and continued incapacity, abuse, neglect or refusal must be shown; (2) such incapacity, abuse, neglect or refusal must be shown to have caused the child to be without essential parental care, control or subsistence; and (3) it must be shown that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *In re Geiger*, 459 Pa. 636, 331 A.2d 172, 174 (1975).

*In re E.A.P.*, 944 A.2d 79, 82 (Pa. Super. 2008).

Father contends that he "did not have a deliberate intent or refusal to remedy the conditions which caused his son to come into care." Father's Brief at 4. He asserts that he has been attending therapy at Three Rivers Adoption Council ("TRAC"), where he is learning effective ways to communicate and how to improve his timeliness and relationships with others. *Id.* at 5. Further, Father argues that the testimony presented suggests that he is able to address Child's physical and emotional needs. Notably, Father urges that he is "able to appropriately feed his son, change him and cuddle appropriately with him. No safety issues were identified when Father visited his son." *Id.* No relief is due.

"'The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties.'" *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa. Super. 2015) (quoting *In re A.L.D.,* 797 A.2d 326, 337 (Pa. Super. 2002)). Furthermore,

the language in subsection (a)(2) should not be read to compel courts to ignore a child's need for a stable home and **strong, continuous parental ties**, which the policy of restraint in state intervention is intended to protect. This is particularly so "where disruption of the family has already occurred and there is no reasonable prospect for reuniting it . . . ."

*In re E.A.P.*, 944 A.2d at 82 (citing *In re William L.*, 383 A.2d 1228, 1240 (Pa. 1978)). As we have stated many times, "'[a] child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.'" *In re I.J.*, 972 A.2d 5, 9 (Pa. Super. 2009) (quoting *In re Adoption of M.E.P.*, 825 A.2d 1266, 1276 (Pa. Super. 2003)).

> Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs. . . .
>
> > This Court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. . . . [A] parent desiring to retain parental rights must exert himself to take and maintain a place of importance in his child's life.

*In re E.A.P.*, 944 A.2d at 83 (citations and quotation marks omitted).

The certified record reveals that Father has caused Child to be without essential parental care and Father will not remedy the conditions that caused the incapacity within a reasonable time. Child was placed into care by CYF because Child was born addicted to methadone. N.T. at 37. CYF immediately noted its concern regarding Father's drug and alcohol use,

stability, housing and criminal activity. *Id.* at 38-40. These problems rendered Father incapable of parenting Child at the time of his removal. Father continued in his drug use throughout the life of this case, only making efforts to achieve sobriety a few weeks before the scheduled termination hearing. *Id.* at 127. Father has made no efforts to secure stable and independent housing, leaving him in no better position to parent Child than at the time of Child's removal. *Id.* at 152.

Moreover, Dr. O'Hara stated,

> [Father] has been diagnosed with major mental illness and I have no way to verify how he's participating with treatment, his level of stability with treatment and his history as well which influences these diagnoses. He also presents with a history of opioid addiction as well. I don't have evidence that he has sufficiently addressed this.

*Id.* at 166. Of great concern, Dr. O'Hara testified that Father was unable to articulate or identify the circumstances that led to Child's removal, he externalized responsibility for all issues relating to Child, and he lacked an independent understanding of what was necessary for him to remedy the conditions that led to Child's removal. *Id.* at 151-54. Finally, although Father would like this Court to believe that he has made substantial progress towards his goals, the trial court noted that Father arrived late to the termination hearing, and that this is further evidence that Father continues to be noncompliant with his FSP goals. Trial Ct. Op. at 7.

Therefore, we discern no abuse of discretion or error of law in the trial court's determination that termination was warranted under section 2511(a)(2).

We now turn to subsection (b), which states:

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S. § 2511(b). Under section 2511(b), we inquire whether termination of parental rights would best serve the developmental, physical and emotional needs and welfare of the child. *In re C.M.S.*, 884 A.2d 1284, 1286-87 (Pa. Super. 2005). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *Id.* at 1287 (citation omitted). The mere finding of a parent-child bond does not preclude termination of parental rights. Rather, the trial court must examine the status of the bond to determine whether its termination "would destroy an existing, necessary and beneficial relationship." *In re Adoption of T.B.B.*, 835 A.2d 387, 397 (Pa. Super. 2003). "[A] court may properly terminate parental bonds which exist **in form** but not **in substance** when preservation of the parental bond would consign a child to an indefinite, unhappy, and unstable future devoid of the irreducible minimum parental care to which that child is entitled." *In re*

***J.W.***, 578 A.2d 952, 958 (Pa. Super. 1990) (emphasis in original). Expert testimony is not required for the trial court to determine if there is a positive bond between a parent and his child. ***In re K.K.R.-S.***, 958 A.2d 529, 533 (Pa. Super. 2008).

Father asserts that because he has consistently visited and engaged in age appropriate behavior and interactions with Child, there is necessarily a bond between them. Father's Brief at 6-7. Father contends that the trial court failed to consider the attachment between Father and Child when determining if terminating the parental rights of Father to Child served the needs and welfare of Child. ***Id.*** at 7. We disagree.

In assessing the bond between Father and Child, the trial court found that although Father has had positive interactions with the child, "ultimately Father does not possess the ability to be responsible for the child's needs and welfare. The child['s] greatest need is security and stability. Father cannot provide those things." Trial Ct. Op. at 8. The trial court thus concluded that because Father has not provided Child with a home, met his needs, provided him with much needed stability, or "address[ed] the pertinent issues that influenced the removal," Child's needs and welfare were best met by terminating Father's parental rights to Child. ***Id.***

The record supports the trial court's decision in this regard. Dr. O'Hara testified that he was limited in his evaluation due to the lack of collateral information he received and Father's defensiveness. Specifically,

Dr. O'Hara noted his concern relating to Father's tendency to externalize responsibility and his unwillingness to remedy the conditions that led to Child's removal. N.T. at 155-56. Dr. O'Hara testified that he has "found this historically to be very problematic" and a significant factor when evaluating a person's ability to parent a child. *Id.* at 154-55.

Moreover, from Dr. O'Hara's observations, "the child exhibited 'several elements of security for the foster parents.'" Trial Ct. Op. at 7. According to Dr. O'Hara, Child's foster parents

> presented with stability. They did not have mental health issues, substance abuse, criminal activity and domestic violence history. [Dr. O'Hara] also observed them to show very positive parenting skills. They were affectionate and attentive. They praised [Child], they were verbally engaging, they encouraged language, they were calm and relaxed. [Foster mother] showed good eye contact while feeding [Child].

N.T. at 143. Dr. O'Hara opined that Child "responded very positively to his foster parents." *Id.*

Accordingly, we find no error or abuse of discretion in the trial court's determination that Child's developmental, emotional and physical needs and welfare are best met by terminating Father's parental rights. We therefore affirm the trial court's conclusion that the requirements of section 2511(b) were met.

Lastly, in its Rule 1925(a) opinion, the trial court *sua sponte* brought this Court's attention to our Supreme Court's recent decision in ***In re Adoption of L.B.M.***, 161 A.3d 172 (Pa. 2017), in which the Court held that

trial courts must appoint counsel to represent the legal interests of any child involved in a contested termination proceeding pursuant to 23 Pa.C.S. § 2313(a).[2]

The Court explained that a child's legal interests are distinct from his or her best interests, in that a child's legal interests are synonymous with the child's preferred outcome, while a child's best interests must be determined by the court. Importantly, the Justices disagreed on whether the role of counsel may be filled by a child's dependency guardian *ad litem* ("GAL"). In the Court's lead opinion, Justice Wecht, joined by Justices Donohue and Dougherty, opined that a child's legal interests cannot be represented by his or her dependency GAL. However, the Court's remaining four Justices disagreed with that portion of the lead opinion, and opined in a

---

[2] Section 2313(a) provides as follows.

> **(a) Child.—**The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a guardian ad litem to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S. § 2313(a).

Here, this Court granted CYF's and the guardian *ad litem*'s applications to file supplemental briefs addressing **L.B.M.** We have received the supplemental briefs as well as Father's responsive brief.

series of concurring and dissenting opinions that a child's dependency GAL may serve as his or her counsel, so long as the GAL's dual role does not create a conflict of interest. **See id.** at 183-93.

Shortly following our Supreme Court's decision in **L.B.M.**, this Court decided **In re D.L.B.**, __ A.3d __, 2017 WL 2590893 (Pa. Super. June 15, 2017). Similar to the case *sub judice*, the appellant in **D.L.B.** argued that section 2313(a) required the appointment of separate counsel for a child in a contested termination proceeding. **Id.** at \*5. The appellant argued that the trial court's failure to appoint separate counsel was structural error, which required this Court to remand the matter for the appointment of separate counsel pursuant to **L.B.M.**. **Id.**

In rejecting the appellant's claim, this Court stated:

> As a point of information, Justice Wecht's opinion in **L.B.M[.]** states that the trial court is required to appoint a separate, independent attorney to represent a child's legal interests even when the child's GAL, who is appointed to represent the child's best interests, is an attorney. Justice Wecht would hold that the interests are distinct and require separate representation. While Justice Wecht, joined by Justices Donohue and Dougherty, sought to so hold, four members of the court, Chief Justice Saylor and Justices Baer, Todd, and Mundy disagreed in different concurring and dissenting opinions with that part of the lead opinion's holding. Specifically, while the other justices agreed that the appointment of counsel for the child is required in all [termination of parental rights] cases and that the failure to do so by the trial court is a structural error, they did not join that part of Justice Wecht's opinion which sought to hold that the GAL may never serve as counsel for the child. **Rather, such separate representation**

> **would be required only if the child's best interests and legal interests were somehow in conflict**.

*Id.* (emphasis added).

The trial court here expressed concern that because it did not appoint Child counsel, a reversal and remand may be appropriate. The trial court notes that a non-attorney GAL was appointed for the purposes of dependency.[3] However, Child's GAL at the termination hearing was an attorney, Jennifer McGarrity, Esq. Moreover, Child was placed in CYF's care shortly after birth and was approximately eight months old at the termination hearing. Our further review of the record does not reveal any conflict between Child's legal interests and best interests as would require a remand. In short, Child is the type of child the dissenting and concurring justices in *L.B.M.* envisioned as too young or too cognitively incapacitated to express his wishes. *See In re D.L.B.*, 2017 WL 2590893, at *5.

Order affirmed.

---

[3] Father did not address *L.B.M.* in his brief. This Court granted the GAL's application to file a supplemental brief addressing *L.B.M.*, and provided Father with fourteen days from the service of the GAL's supplemental brief to file a responsive brief. Father has not filed a responsive brief.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/30/2017